**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**GREGORY T.,**

      **Plaintiff,**

**v.**                                                              **Case No.: 1:23-cv-00514**

**MARTIN J. O'MALLEY,
Commissioner of the
Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings, as articulated in their briefs. (ECF Nos. 6, 9).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 6); **GRANT** Defendant's request to affirm the Commissioner's decision, (ECF No. 9); **AFFIRM** the decision of the

Commissioner; and **DISMISS** this action and **REMOVE** it from the docket of the Court.

## I.    Procedural History

On May 14, 2020, Plaintiff Gregory T. ("Claimant"), protectively filed for SSI, alleging a disability onset date of June 15, 2016 due to grand mal seizures, anxiety, depression, "brain processing problem," right side of the body weakness and slowness, brittle bones due to prior medication, hepatitis C and liver conditions, lack of oxygen, and memory loss. (Tr. at 462, 706). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 462). Claimant filed a request for an administrative hearing, which was held on March 2, 2022 before the Honorable Suzette Knight, Administrative Law Judge (the "ALJ"). (Tr. at 511-535). By written decision dated June 22, 2022, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 459-483). The ALJ's decision became the final decision of the Commissioner on June 9, 2023 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of Proceedings. (ECF No. 5). Claimant then filed a Brief, seeking judgment on the pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a Reply. (ECF Nos. 6, 9, 10). Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 49 years old on his protective filing date and 51 years old on the date of the ALJ's decision. (Tr. at 473). He completed the tenth grade, communicates in English, and does not have any past relevant work. (Tr. at 473-474, 532, 705, 707).

### III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the

performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic

4

work activities. *Id.* § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(4).

Here, at the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since the date of his SSI application. (Tr. at 465, Finding No. 1). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: epilepsy, chronic liver disease, bipolar and related disorders, neurocognitive disorder, and anxiety and obsessive-compulsive disorder. (Tr. at 465, Finding No. 2). The ALJ also considered Claimant's substance addiction disorders to drugs and alcohol and degenerative disc disease, but the ALJ concluded that the impairments were non-severe. (Tr. at 465-466). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 466-468, Finding No. 3).

5

Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can lift and/or carry and push and/or pull 25 pounds occasionally and 20 pounds frequently; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch and crawl; he can tolerate frequent exposure to extreme cold, extreme heat, and concentrated atmospheric conditions (as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (DOT)); he can never be exposed to hazards (such as unprotected heights or machinery with open, moving parts); and he is able to understand, remember, concentrate, persist, and maintain pace to perform simple, routine and repetitive work related tasks, in two hour increments in order to complete an eight hour day.

(Tr. at 468-473, Finding No. 4).

At the fourth step, the ALJ determined that Claimant had no past relevant work. (Tr. at 473, Finding No. 5). Therefore, under the fifth and final inquiry, the ALJ assessed Claimant's age and education in combination with his RFC to determine his ability to engage in substantial gainful activity. (Tr. at 473-475, Finding Nos. 6-9). The ALJ noted that (1) Claimant was born in 1971 and was defined as a younger individual on the application date, but he subsequently changed age category to an individual closely approaching advanced age; (2) he had a limited education and could communicate in English; and (3) transferability of job skills was not material to the disability determination because Claimant had no prior relevant work. (Tr. at 473-474, Finding Nos. 6-8). Considering these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform jobs that existed in significant numbers in the national economy, including unskilled medium exertional work as a hand packager, counter-supply worker, and sandwich maker. (Tr. at 474, Finding No. 9). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act. (Tr. at 475, Finding No. 10).

**IV.    Claimant's Challenge to the Commissioner's Decision**

Claimant argues that the ALJ's RFC finding is contrary to law and not supported by substantial evidence based on *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020), because it does not reflect Claimant's moderate limitations in concentration, persistence, or pace. (ECF Nos. 6, 10). In response to Claimant's challenge, the Commissioner argues that the ALJ explained why additional limitations were not warranted, and the RFC finding is supported by Claimant's benign mental status findings, conservative mental health treatment, reported activities, and prior administrative findings. (ECF No. 9).

**V.    Relevant Evidence**

The undersigned reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A.  Treatment and Examination Records

On March 19, 2020, Katherine Zane, Ph.D., with the assistance of supervising psychologist Liv Miller, Psy.D., performed a neuropsychological evaluation of Claimant due to his complaints of worsening short-term memory and anxiety. Claimant reported problems with word-finding, attention, distractibility, ruminative and racing thoughts, reduced motivation, fatigue, and social isolation. (Tr. at 822). He claimed that he had trouble remembering appointments and needed to rely on friends and family to assist with daily activities, such as driving, remembering appointments, and managing finances. (*Id.*). Claimant had been taking Vistaril for a few months, but he did not find it to be helpful. He also reported a history of a learning disability, and he had to repeat the fifth grade. On examination, Claimant exhibited slow speech with notable response delays, but he was unaccompanied and able to respond to questions. Claimant was diagnosed with

7

mild cognitive impairment and severe behavioral dysfunction secondary to depression and anxiety. (Tr. at 823). The impairments caused deficits in visual memory and frontal lobe functioning (complex attention, processing speed, and verbal/non-verbal reasoning). (*Id.*). Drs. Zane and Miller explained that, while the degree of cognitive and behavioral dysfunction could make it difficult for Claimant to work at that time, they were hopeful that he would experience improvement in his cognitive functioning following relief from his current levels of emotional distress. (Tr. at 833). They recommended a psychiatry referral for medication management, psychoeducation, behavioral activation, and a sleep study because that could be impacting his mental issues as well. (*Id.*).

During a telehealth appointment with Katrina Shires, FNP, on April 24, 2020, Claimant requested a referral to see a psychologist. (Tr. at 929). He reported that he was having some anxiety and his neurologist wanted him to see a psychologist for his frontal lobe damage and short-term memory loss. (*Id.*). On July 8, 2020, Claimant underwent a psychiatric evaluation at Southern Highlands Community Health Center. Claimant stated that he had problems with worsening anxiety and depression over the past five years. (Tr. at 852). His primary care provider prescribed him various medications, but Xanax was supposedly the only one that helped. (*Id.*). Claimant also reported that he was taking medication for seizure disorder with the last seizure occurring in June 2020, and he was taking suboxone for history of alcohol abuse. (*Id.*). Claimant's mental status examination findings were normal other than his depressed and anxious mood, flat affect, and worried attitude. (Tr. at 859). Claimant was pleasant and cooperative with good hygiene, well groomed, appropriately dressed, and in no apparent distress. (*Id.*). He demonstrated spontaneous and coherent speech of normal rate, volume, and tone. (*Id.*). There was no evidence of hallucinations or delusions, and his thought processes were linear and goal

directed. (*Id*.). Claimant was oriented in all spheres with grossly intact recent and remote memory and attention. (*Id*.). The examiner noted that Claimant "track[ed] well." (*Id*.). He displayed appropriate behavior, normal psychomotor activity, fair insight/judgment, and average intelligence. (*Id*.). He was diagnosed with generalized anxiety disorder, unspecified depressive disorder, and mild neurocognitive disorder and started on a trial of Lexapro 10 milligrams per day. (Tr. at 860).

On August 21, 2020, Claimant asked Nurse Shires for a counseling referral. (Tr. at 1001). He related that he went to a psychiatrist, but she was rude and accused him of being an alcoholic. (*Id*.). Claimant stated that he did not like the psychiatrist and did not return to her. (*Id*.). On examination, Nurse Shires recorded Claimant's normal grooming, euthymic mood, normal affect, and unimpaired thought processes and content. (Tr. at 1002). She provided him a psychiatry referral and prescribed 10 milligrams of Lexapro per day. (Tr. at 1003).

On October 13, 2020, Noel Jewell, M.D., performed a psychiatric evaluation of Claimant. He appeared his stated age and was alert, pleasant, cooperative, engaged, and well groomed. (Tr. at 1080). He described his mood as "anxious," but he exhibited logical and coherent speech of normal rate, volume, and tone; logical, linear, and goal-directed thought processes with no evidence of loosening of associations; grossly intact recent and remote memory and attention; average fund of knowledge; intact verbal fluency and auditory comprehension; and appropriate thought content. (Tr. at 1080). Dr. Jewell assessed that Claimant's anxiety and depression were stable or improved. (Tr. at 1081). She prescribed hydroxyzine and stated that she would recommend therapy if it did not help. (*Id*.).

During a follow up examination with Dr. Jewell on January 25, 2021, Claimant said

that he was alright, but he was "off" of his medications. (Tr. at 1083). Dr. Jewell recorded the same normal mental status examination findings other than Claimant's reported anxious and depressed mood. (Tr. at 1084). She prescribed Paroxetine. (Tr. at 1085). Another psychiatrist, Edward Bez, D.O., examined Claimant on September 23, 2021 regarding his complaints of depression and anxiety. Claimant was oriented in all spheres and displayed average hygiene, normal speech, cooperative attitude, depressed and anxious mood with appropriate affect, sufficient attention/concentration, no memory impairment, average fund of knowledge, logical/coherent thought processes, and appropriate thought content and judgment/insight. (Tr. at 1343). Dr. Bez prescribed Lexapro and trazadone. (*Id.*).

On November 16, 2021, Claimant returned to Dr. Bez. Claimant confirmed that Lexapro was helping his mood, but he took an extra dose whenever he felt that the effects faded a bit. (Tr. at 1359). Dr. Bez advised him to stop taking extra medication. (*Id.*). Claimant's mental status examination was completely normal, including euthymic mood. (Tr. at 1359). He was continued on the same medications. (Tr. at 1360).

### B. Opinion Evidence

On October 15, 2020, Jeff Boggess, Ph.D., performed a psychiatric review technique based upon his review of Claimant's records. He assessed that Claimant had mild limitations interacting with others and adapting or managing himself and moderate limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (Tr. at 557). Dr. Boggess noted that Claimant had sustained concentration and persistence limitations. (Tr. at 557-58). He concluded that Claimant's ability to perform very short and simple instructions was not significantly limited, but his ability to carry out detailed instructions and maintain

attention and concentration for extended periods was moderately limited. (Tr. at 561). Overall, Dr. Boggess found that Claimant had the mental RFC to perform simple, routine, repetitive tasks in a work-like setting. (*Id*.). Jeff Harlow, Ph.D., affirmed these findings on May 13, 2021. (Tr. at 576-78, 583-85).

### C. Claimant's Statements

Claimant testified during his administrative hearing on March 2, 2022 that he lived in a home with his wife, who was employed. (Tr. at 519). He cited that the main reason that he could not work was because his "brain [could] not hold a conversation," such as, when he got off the phone, he would not even recall the phone call a couple of hours later. (Tr. at 524). He got confused about "[d]irect orders and stuff." (*Id*.). For instance, if someone told him to do something, he forgot the task by the time he got there to do it. (Tr. at 525). Claimant also testified that he suffered from back problems and tingling down his legs. (Tr. at 524). In a typical day, he made and drank coffee, walked around the yard a bit for exercise, watched television, and waited on his wife to get home. (Tr. at 526). He occasionally took out the garbage and vacuumed. (*Id*.). He grocery shopped once a month, but he felt like he was embarrassing himself around other people because he said things that did not make sense. (Tr. at 527-28).

## VI.  Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

[E]vidence which a reasoning mind would accept as sufficient to support a

> particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the Court's role is limited to ensuring that the ALJ followed applicable regulations and rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

Claimant argues that the ALJ's RFC assessment does not reflect the ALJ's step two findings describing Claimant's moderate concentration, persistence, and pace deficits, which violates the Fourth Circuit's holdings *Mascio* and *Shinaberry*. (ECF No. 10 at 1). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 416.945(b)-(d)

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an

ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As relevant to this action, the mental functional category of concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(3) (effective Apr. 2, 2021 to Oct. 5, 2023). Examples of activities that fall within this category include "[i]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

When the ALJ applies the special technique to rate a claimant's degree of mental limitations, the ALJ determines whether the claimant is able to use each of the paragraph B areas of mental functioning in a work setting. *Id.* at § 12.00F(1). The ALJ uses a five-point scale, ranging from no, mild, moderate, marked, and extreme limitations. *Id.* at § 12.00F(2)(a)-(e). Each rating corresponds to the claimant's ability to function in the broad mental category "independently, appropriately, effectively, and on a sustained basis." *Id.* A finding of "no limitation" reflects that the claimant can function in the category; "mild limitation" means that the claimant's ability to do so is "slightly limited;" "moderate limitation" indicates that the claimant has "fair" functional ability in the

category; "marked limitation" means that the claimant's ability to function in the category is "seriously limited;" and an "extreme limitation" rates that the claimant cannot function in that category "independently, appropriately, effectively, and on a sustained basis." *Id.*

In *Mascio*, the ALJ found at step three of the disability determination process that the claimant experienced moderate difficulties in maintaining concentration, persistence, or pace; however, the ALJ failed to include any mental RFC restrictions in the controlling hypothetical question presented to the vocational expert. *Mascio*, 780 F.3d at 637-38. While the vocational expert supplied a list of jobs that were unskilled, the Fourth Circuit found this to be insufficient to account for the claimant's moderate mental limitations and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The Court indicated that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to either include any mental restriction in the RFC ***or*** explain why a "moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation" in the ALJ's RFC finding, the Fourth Circuit found that remand was appropriate. *Id.*

Subsequently, in *Sizemore*, a claimant relied on *Mascio* in arguing that an ALJ erred by failing to either account for his moderate difficulties with regard to concentration, persistence, and pace in his RFC or adequately explain why it did not affect the claimant's ability to work. *Sizemore v. Berryhill*, 878 F.3d 72, 80 (4th Cir. 2017). The Fourth Circuit concluded that the ALJ's assessment was substantially supported by the findings of the examining and non-examining psychologists. *Id.* at 81. The opinions of

those psychologists supported the ALJ's conclusion that, "despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing simple one, two-step tasks, as long as he was working in low stress non-production jobs with no public contact." *Id.* The Fourth Circuit rejected the claimant's *Mascio*-based challenge.

The Fourth Circuit later expounded in *Shinaberry* that its ruling in *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry,* 952 F.3d at 121. Rather, the ALJ could conclude that the moderate limitation did not affect the claimant's ability to work. *Id.* In Shinaberry's case, the ALJ "discussed in detail the psychological evaluations performed by the SSA psychological consultants and [examining psychologist], as well as Shinaberry's adult function report, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in her concentration, persistence or pace." *Id.* Accordingly, the Fourth Circuit held that the ALJ's findings and the mental limitation included in the RFC were sufficiently explained and supported by substantial evidence in the record. *Id.* at 122.

In this case, the ALJ found that Claimant had mild limitations in the areas of interacting with others and adapting or managing himself, but moderate limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (Tr. at 467). Regarding concentration, persistence, and pace, the ALJ considered that Claimant was diagnosed with a mild cognitive impairment and the subtests showed that he had deficits in complex attention, processing speed, and verbal/non-verbal reasoning. (*Id.*). During his consultative examination, he exhibited

slow speech and notable response delays, but he was able to complete the tests without having to take breaks, and there was no evidence of distractibility. (*Id.*). There was also evidence of episodic dizziness, anxiety, and fatigue due to difficulty sleeping that could affect this area of functioning, but the record did not support marked limitations in concentration, persistence, or pace. (*Id.*). The ALJ assessed that, once motivated, Claimant could read, handle his personal care, watch television, schedule appointments, and perform some housework to completion. (*Id.*).

In the RFC discussion, the ALJ exhaustively analyzed Claimant's psychiatric evaluations and treatment records. (Tr. at 469-72). The ALJ concluded that Claimant's mild cognitive impairment did not appear to affect his functioning, as supported by the fact that Claimant attended appointments alone and was able to communicate his needs without difficulty. (Tr. at 472). Also, despite his mental symptoms, Claimant never required inpatient treatment and generally maintained normal mental status examinations. (*Id.*). The ALJ was also persuaded by the opinions of the psychological consultants, who concluded that, despite Claimant's mild and moderate mental limitations, Claimant could perform simple, routine, and repetitive tasks in work-like settings. (Tr. at 473).

The decision thus provides a logical bridge between the evidence and the ALJ's mental RFC finding. What has been made clear in the wake of the *Mascio* decision is that a moderate or "fair" ability to concentrate, persist, or maintain pace does not necessarily translate into certain work-related mental limitations. When the ALJ sufficiently explains the mental RFC finding, and it is supported by more than a scintilla evidence, as is the case here, the decision must be affirmed. Here, the ALJ very clearly explained that she was persuaded by the state agency psychologists' findings because they were consistent

with the record showing that Claimant could perform basic tasks. (Tr. at 473). The ALJ elaborated that Claimant may have had reminders to prompt performance, but he was able to independently perform routine daily tasks and could follow simple instructions during appointments. (*Id.*).

The undersigned concludes that the ALJ's explanation and findings are far more reminiscent of the *Shinaberry* analysis, which the Fourth Circuit found to be adequate, than the RFC assessment in *Mascio*. Like *Shinaberry*, the ALJ relied on the opinions of medical experts and other evidence in concluding that the mental RFC limitation to simple, routine, and repetitive tasks accounted for Claimant's cognitive impairment and moderate limitations in concentration, persistence or pace. *Shinaberry,* 952 F.3d at 121. "An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court." *Tracy C. v. O'Malley*, No. 1:23CV198, 2024 WL 1286484, at *6 (M.D.N.C. Mar. 26, 2024). The prior administrative findings thus provide more than a scintilla of evidence to support the ALJ's mental RFC finding in addition to the other evidence that the ALJ considered.

Claimant argues that the ALJ never actually stated that the limitation to simple, routine work tasks accounted for Claimant's moderate deficits in maintaining concentration, persistence, or pace. (ECF No. 6 at 9). This assertion is unavailing. The ALJ explicitly stated that Claimant had the RFC to "understand, remember, **concentrate, persist, and maintain pace** to perform simple, routine and repetitive work related tasks" in two-hour increments. (Tr. at 468) (emphasis added). The ALJ

clearly identified that the mental RFC restrictions were included to account for Claimant's moderate limitations in (1) understanding and remembering information and (2) concentrating, persisting, and maintaining pace.

Furthermore, although two-hour breaks are customary in unskilled jobs, most district courts in the Fourth Circuit have concluded that an ALJ's explicit finding that the claimant can perform tasks in two-hour increments addresses the claimant's moderately limited ability to maintain concentration, persistence, and pace. *Escalante v. O'Malley*, No. 5:23-CV-151-MOC, 2024 WL 870577, at *3 (W.D.N.C. Feb. 29, 2024) ("This Court has repeatedly and consistently stated that reference to the ability to remain on task for two hours at a time satisfies the *Mascio* requirement that an ALJ address the ability to remain on task.") (cleaned up); *Christensen v. Saul*, No. 1:19CV68-MOC, 2019 WL 6359764, at *7 (W.D.N.C. Nov. 27, 2019) ("As the [RFC] finding makes clear, the ALJ concluded that Plaintiff could work 'for two-hour blocks of time with normal rest breaks during an eight-hour workday.' Thus, the ALJ provided the 'logical bridge' that explains the reasoning behind his conclusions, facilitating this Court's review in accordance with the applicable caselaw.") (citation omitted); *Fender v. Berryhill*, No. 1:17-CV-00041-RJC, 2018 WL 1536485, at *7 (W.D.N.C. Mar. 29, 2018) ("Here, the Court finds that a two-hour limitation directly addresses Plaintiff's moderate limitations in concentration, persistence or pace ("CPP"). Not only have other courts reached this conclusion, but this two-hour limitation closely resembles the effects of limiting a claimant to a non-production pace, which also adequately addresses moderate difficulties in CPP."); *Shang v. Saul*, No. 5:19-CV-00582-RN, 2021 WL 9639628, at *5 (E.D.N.C. Mar. 6, 2021) (finding that RFC limitations of simple instructions, consistent with reasoning level one and two jobs, and working in two-hour intervals, adequately reflected a moderate

limitation in concentration, persistence, or pace found at step two); *Cf. Chad H. v. Kijakazi*, No. CV 22-1241-BAH, 2023 WL 2837524, at *3 (D. Md. Apr. 6, 2023) ("The other accommodation—limiting Plaintiff to two hours of concentration before requiring a break—has been similarly rejected by this Court as insufficient to account for a claimant's moderate limitations in concentration, persistence, and pace because breaks at two-hour intervals are customary even for those without limitations.").

For those reasons, the undersigned **FINDS** that the ALJ's mental RFC analysis complies with the law and is supported by substantial evidence.

## VIII.   <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's motion for judgment on the pleadings, (ECF No. 6); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 9); **AFFIRM** the Commissioner's decision; and **DISMISS** this action and **REMOVE** it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge

for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** April 10, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge